## Stetler et al. v. Stetler et al.

*Contempt of court—Intent—Advice of counsel—Violation of injunction.*

1. A court in determining whether an act complained of constitutes a contempt of court should consider well and carefully all the incidents, and circumstances attending the act, and particularly the question of intent.

2. Where the respondents in a rule for contempt for violating an injunction order all swear that they had no intent to commit a contempt, and the evidence shows that they took the advice of counsel before acting, the court, in the exercise of its discretion, and upon consideration of all the attendant circumstances, may discharge the rule.

Rule to show cause why an attachment should not issue for contempt in disobeying injunction. C. P. Snyder Co., June T., 1923, No. 1, in Equity.

*Jay G. Weiser* and *Andrew A. Leiser*, for rule.

*Charles P. Ulrich, A. F. Gilbert* and *A. W. Johnson*, contra.

POTTER, P. J., Jan. 14, 1924.—On May 17, 1923, a preliminary injunction was asked for, the prayers of which were as follows:

"1. That your honorable court decree that the contract between said A. L. Stetler and said School District of the Borough of Middleburg, Snyder County, Pennsylvania, be declared null and void, and any payments to him thereunder be enjoined.

"2. That the said board of school directors and the individual members thereof, their officers, agents, employees and servants, be perpetually enjoined from the execution of said resolution as to the remodeling of the present school building and the erection of an addition thereto or a high school building in connection therewith.

"3. That said board of school directors be enjoined from incurring any indebtedness for the remodeling of the present school building or the erection of an addition thereto or of a high school building without a strict compliance with the provisions of the Constitution and laws of Pennsylvania as to the amount of such indebedness, the issuing of bonds therefor, and the provisions for the payment thereof, as well as the consent of the electors in the premises.

"4. That said board of school directors be enjoined from assessing or levying any taxes for the purpose of carryig into execution the resolutions adopted for the employment of said A. L. Stetler as architect, and of the remodeling of the present school building and the erection of an addition thereto or the erection of a high school building thereunder.

"5. Other and general relief."

4 D. & C.

The preliminary injunction was granted, which, later on, on Sept. 15, 1923, on disposition being made of the case, was made perpetual. On Aug. 17, 1923, not long after the preliminary injunction was granted, and before it was made perpetual, the defendants began to take steps for the erection of an addition to the high school building in Middleburg, this building being situated in that part of Middleburg which was formerly known as Swineford, and, later on, caused an addition to be built to said high school building, the dimensions of which are not at our command, the same being one story high and large enough for an ordinary sized school-room, this said addition, from its manner of construction, having the appearance of being temporary only.

It is claimed by the plaintiffs that the defendants, by building this said addition, have disobeyed the injunction, and are guilty of contempt, and on Aug. 25, 1923, a rule was taken out upon them, requiring them to appear and show cause why they should not be adjudged guilty of this charge. On Sept. 12, 1923, these said defendants, or rather four of them, namely, Laura H. Barnes, John F. Stetler, Absalom D. Gougler and Joseph S. Oberle (he having been appointed in place of Charles M. Bickel, who resigned), filed their answer to the rule, denying any intention on their part to disobey the injunction, there being no attempt made to embrace James G. Thompson in these contempt proceedings.

A hearing was had on this rule in open court, when each of these four directors, namely, Laura H. Barnes, John F. Stetler, Absalom D. Gougler and Joseph S. Oberle, took the witness-stand and testified, under their oaths, that before they took any steps looking towards the erection of this said addition to the said high school building, they asked their legal counselor whether or not they had a right so to do, and whether or not they would be violating the injunction by so doing, and that they were advised by their said counselor that the injunction did not embrace the building to which the addition was proposed to be added. They also testified that they had no intention whatever of, in any manner, violating the injunction.

"Contempt of court" is a wilful disregard of the authority of a court of justice, or disobedience to its lawful orders. It is committed when a person does any act in wilful contravention of the authority or dignity of the court, or tending to impede or frustrate the administration of justice, and is of two kinds chiefly, those that are committed in the face of the court, which are punishable by fine and commitment, and those committed out of court, which are punishable by attachment. The case before us comes under the second class.

We also have this offence defined as "a disobedience to the court by acting in opposition to the authority, justice and dignity thereof:" 13 Corpus Juris, 5.

Disobedience, or resistance of, or an attempt to prevent the execution of a lawful order, judgment, decree or mandate of a court is such an interference with, or attempt to obstruct the due administration of, justice as to constitute a contempt: 13 Corpus Juris, 9.

And in case of a contempt, the power of the courts to punish extends to all persons who interfere with the proper exercise of their judicial functions, including officers of the court, parties litigant or strangers: 13 Corpus Juris, 39.

It is universally conceded that with the application of a few general principles, each court is to judge whether or not the offence complained of constitutes a contempt, and, in arriving at a conclusion, all the incidents and circumstances should be well and carefully considered, and we think one of the foremost among these circumstances or general principles is the matter

Stetler et al. v. Stetler et al.

of intent. Was it the intent of the person attached to violate the order of the court, or was the act done in the full belief that by its performance no order of court would be violated?

To constitute a contempt the act must have been wilful, and, applying the law as we find it to this case, was the violation of this injunction, if in fact it was a violation, wilful? Was it done knowingly and with a full knowledge that the contemplated act would be in direct violation of the court's order? Or was it done in such an open and defiant manner as to manifest an utter disregard of the order of the court?

We have the sworn testimony of Laura H. Barnes, John F. Stetler, Absalom D. Gougler and Joseph S. Oberle that they were advised by counsel, upon their inquiry, that they had a legal right to build the addition to the high school building, and that in so doing they would not violate any order of this court. This is not contradicted, so we must accept this statement in this behalf as being true. Their counsel also said in open court that he had so advised them. Just whether this advice was correct or not, in view of the disposition we are making of these proceedings, is not material. However, we might say that it is very near the danger line. If they fully believed they were not disobeying the court's order, there was no intent to do wrong on their part, and their disobedience, if indeed such it can be called, was not wilful. How, then, could they be convicted of contempt?

The fact that the contemner acted under the advice of counsel is generally no defence to a proceeding for contempt, but there are cases where a modification of this rule has been recognized, and this fact may largely be considered in determining the punishment: 13 Corpus Juris, 43.

In the case of United States v. The Church of the Latter Day Saints, 6 Utah, 9, it was held that when a witness before a referee refuses to answer questions which are ruled by the referee to be proper, but in doing so acts on the advice of counsel, he will be excused from the punishment for contempt which would otherwise be imposed.

And in practice at the present day, where it is apparent that no disrespect was intended, a disavowal of intention to commit contempt will be considered in extenuation of, or sometimes as purging, the contempt: 13 Corpus Juris, 45.

We feel that the power to punish for contempt is such a powerful remedy placed within easy reach of the court that it should be very sparingly exercised. It may be so frequently exercised as to destroy that moral influence which is the court's best possession, until finally the administration of justice is brought into disrepute. Respect for courts cannot be compelled; it is the voluntary tribute of the public to worth, virtue, probity and intelligence, and while these sterling qualities are found on the judgment seat, so long and no longer will they retain the public confidence. It is, at best, an arbitrary power, and should be exercised on the preservative and never on the vindictive principle. It is not a jewel of the court to be admired and prized, but rather a rod, which is most powerful when rarely used.

The question before us, and the only question, is, are these four directors guilty of contempt or are they not?

Judging from the attending circumstances, we must say that we do not think they, or any of them, intended to disobey the injunction of this court. Before they proceeded to take any steps towards the building of this addition, they sought advice of counsel, and acted solely on this advice. This action on their part surely is lacking in any element of disobedience; therefore, their action in building was not a wilful disobedience, without which they cannot be convicted of contempt.

4 D. & C.

Stetler et al. *v.* Stetler et al.

Then, again, the writer hereof has known these four persons for quite a length of time; some of them quite intimately for many years, and in that time they have always demonstrated their willingness to abide by the laws of our Government and the orders of those in authority.

Technically speaking, they may have disobeyed the injunction; morally speaking, we think they have not.

One of the briefs filed by counsel for the defendants attempts to resurrect into this proceeding the injunction proceedings. We can only say they are past and gone, have been decided by this court as we think is legal and right, and any arguments of counsel relative thereto are not, and will not be, considered in this proceeding.

And now, to wit, Jan. 14, 1924, in accordance with the views herein contained, the rule to show cause is discharged.